UNITED STATES of America, Plaintiff,

v.

Armin A. ZIEGENHAGEN, Defendant.

No. 88-CR-50-C.

United States District Court,
W.D. Wisconsin.

Oct. 1, 1991.

Daniel Bach, Asst. U.S. Atty., Madison, Wis., for plaintiff.

Morris D. Berman, Madison, Wis., for defendant.

**OPINION and ORDER**

CRABB, Chief Judge.

Defendant brings this motion to vacate his sentence pursuant to 28 U.S.C. § 2255, contending that his sentence for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), is invalid because prior convictions for burglary and armed robbery were used improperly to enhance his sentence, and because his counsel was ineffective for failing to show that the prior convictions could not be used.[1]

Defendant was convicted in this court of violating 18 U.S.C. § 922(g), the maximum term for which is five years unless the offender has three previous convictions for violent felonies, in which case there is a mandatory minimum sentence of at least fifteen years. A violent felony is "any crime punishable by imprisonment for a term exceeding one year," "that has as an element the use or attempted use of physical force against the person of another," or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Defendant was found to be subject to the enhanced penalty provision of § 924(e) because he had prior state court convictions for burglary, armed robbery and battery to a peace officer.

Defendant contends that it was improper to consider two of his previous convictions as violent felonies for sentence enhancement purposes because the State of Wisconsin restored his civil rights in 1974 after he completed service of his sentences for those convictions. He argues that § 924(e) must be read together with 18 U.S.C. § 921(a)(20), which defines the term "crime punishable by imprisonment for a term exceeding one year" as not including "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored ... unless such pardon, expungement, or resto-

---

1. Defendant contends also that his counsel was ineffective for failing to challenge a 1976 conviction that was used to convict defendant of violating 18 U.S.C. § 922(g)(1). In an order entered May 3, 1991, I held that this contention was meritless, and directed the government to respond only to the issue presently before the court: defendant's contention that his 1969 convictions were used improperly to enhance his sentence under 18 U.S.C. § 924(e).

ration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

The government opposes defendant's motion, arguing that the court cannot even consider it because defendant did not raise it at sentencing or on direct appeal, and has not shown cause for his failure to do so. In the alternative, the government argues that defendant's underlying claim is meritless because his predicate offenses properly qualified as convictions to enhance his sentence.

I conclude that defendant would be able to show cause for his failure to raise this claim earlier if he could show that his counsel's failure to raise it constituted ineffective representation and that the failure prejudiced defendant. However, I conclude that defendant has failed to show that he was prejudiced by his attorneys' failure to challenge the government's use of two of his convictions to enhance his sentence, making it unnecessary to determine whether this failure constitutes deficient performance by counsel.[2]

On June 13, 1991 and August 1, 1991, defendant submitted motions to supplement his traverse with copies of state statutes, legislative history and case law. These materials are not necessary to a decision on defendant's motion to vacate his sentence; therefore, the motions to supplement will be denied.

## FACTUAL BACKGROUND

Three months before defendant's November 1988 trial in this court for possession of a firearm by a convicted felon, the government gave notice of its intention to seek the imposition of an enhanced penalty under 18 U.S.C. § 924(e). Later the government advised defendant that it would rely on his prior convictions for battery to a peace officer in 1975 and for strong arm robbery and burglary in 1969. Prior to sentencing, defendant moved to bar application of the enhanced sentence on the ground that the 1969 burglary conviction did not qualify as a violent felony under § 924(e) because the common law definition of "burglary" did not include the burglary of a commercial establishment, the offense he had committed. The motion was denied and defendant was sentenced to the statutory minimum, 15 years' imprisonment.

Defendant appealed the determination that the burglary conviction qualified as a violent felony under § 924(e).[3] The court of appeals affirmed the conviction and sentence, holding that the burglary conviction qualified as a predicate offense under § 924(e) and that sentence enhancement was proper.

Defendant then filed a *pro se* motion in the court of appeals asking for a rehearing. For the first time in any court he raised the

**2.** The disposition of the prejudice question makes it unnecessary to determine whether both defendant's trial counsel and the attorney appointed to represent him on appeal were ineffective in failing to spot this issue, or what weight should be given to the fact that two experienced and able counsel missed the issue.

**3.** While defendant's appeal was pending, defendant filed a *pro se* motion in the court of appeals seeking to vacate his sentence, asking that a fellow inmate be substituted for his original counsel because of what defendant contended was a prejudicial conflict of interest resulting from his counsel's involvement in his 1969 convictions. The court of appeals stayed a decision on the merits of defendant's appeal, holding that an actual conflict of interest existed, and remanded the case for an evidentiary hearing to determine whether defendant had made a knowing and intelligent waiver of the conflict in

his trial representation. *See United States v. Ziegenhagen,* 890 F.2d 937, 941 (7th Cir.1989).

New counsel was appointed for defendant and an evidentiary hearing was held. I found that defendant's retained counsel had not been required to make a choice between "advancing his own interest to the detriment of his client's," *United States v. Ziegenhagen,* 88–CR–50–C, slip op. at 7–8 (W.D.Wis.1990); therefore, there was no actual conflict of interest in the trial representation of defendant and nothing for defendant to waive. I found also that there had been no potential conflict during the trial because counsel was unaware of the conflict at that time, and that defendant had defended his client zealously at sentencing, when counsel was aware of the conflict.

The Court of Appeals for the Seventh Circuit agreed with the conclusion that defendant had not been denied the effective assistance of counsel because of a conflict of interest and denied defendant's motion for substitution of counsel.

contention that his counsel had been ineffective for not challenging the use of defendant's 1969 convictions as a basis for sentence enhancement when defendant's civil rights had been restored after he served his sentences for those offenses. The court of appeals denied the petition for rehearing, holding that the issue was a new one that must be raised first in a petition to the district court pursuant to § 2255. The court of appeals cautioned that the success of defendant's claim was questionable in light of its opinion in *United States v. Erwin*, 902 F.2d 510 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990) and the existence of a Wisconsin law prohibiting a convicted felon from possessing a firearm, Wis.Stat. § 941.29.

On April 28, 1991, defendant filed the present motion, together with a document issued in 1974 by the Wisconsin Department of Health and Social Services, entitled "Discharge." [4] The document recites the date and subject of defendant's 1969 convictions and then states:

> It further appearing that the aforesaid has met the conditions of the sentence; Now, therefore, it is ordered that effective May 15, 1974, the aforesaid be, and hereby is, discharged.

> Any civil rights lost as a result of conviction herein described, are restored by virtue of this discharge, under the provisions of section 57.078 of the Statutes of the State of Wisconsin.

As of May 15, 1974, Wis.Stat. § 57.078 read as follows:

> Every person who is convicted of crime obtains a restoration of his civil rights by serving out his term of imprisonment or otherwise satisfying his sentence. The certificate of the department or other responsible supervising agency that a convicted person has served his sentence or otherwise satisfied the judgment against him is evidence of that fact and that he is restored to his civil rights.

In 1976, defendant was convicted in the Eastern District of Wisconsin of violations of 18 U.S.C. §§ 922(a), (g) and 922(h) (knowingly making false written statements concerning his past criminal record in connection with purchases of firearms and knowingly receiving firearms). Defendant's defense to the charges was that his "constitutional right to bear arms was restored pursuant to § 57.08 Wis.Stats., thus making his purchase of firearms lawful." *United States v. Ziegenhagen*, 420 F.Supp. 72, 73 (E.D.Wis.1976). As an alternative, he argued that even if the previous convictions made his purchases illegal, he believed that the state's restoration of his civil rights made the purchase lawful. *Id.* The court rejected the arguments and entered a judgment of conviction.

## OPINION

### A. *Cause and Prejudice*

■ Federal prisoners cannot obtain collateral relief pursuant to 28 U.S.C. § 2255 based on trial errors to which they did not raise a timely objection unless they can show both cause for the failure to raise the issue and prejudice as a result. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *Norris v. United States*, 687 F.2d 899 (7th Cir.1982). The Supreme Court has explained that the "cause and prejudice" requirement rests on the importance of according significance to the existence of a final judgment perfected by appeal, instead of assuming that the federal trial and appellate procedures are so unreliable that their completed operation should not be given binding effect when a litigant has had a fair opportunity to present his federal claims in a federal forum. For these reasons, a collateral challenge should not be allowed to "do service for an appeal." *Frady*, 456 U.S. at 164–66, 102 S.Ct. at 1592–93.

Defendant seeks to establish cause and prejudice by showing that his counsel was ineffective in failing to raise the claim that defendant's discharge certificate restored his civil rights and that an enhanced sen-

---

**4.** Defendant has not submitted a certified copy of the discharge document, but the government does not contest the accuracy of the uncertified duplicate copy he did submit.

tence cannot be based on convictions for which civil rights have been restored; that this ineffective assistance constitutes "cause" for the procedural default; and that defendant experienced actual prejudice as a result of this default because he would not have received an enhanced sentence if the government had not been able to rely on the two 1969 convictions.

■ Ineffective assistance of counsel can provide cause for a procedural default if counsel's performance is constitutionally ineffective under the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Rosenwald v. United States,* 898 F.2d 585, 587 (7th Cir.1990) (citing *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645); *United States v. Kovic,* 830 F.2d 680, 684 n. 9 (7th Cir.1987), *cert. denied,* 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988). Under *Strickland,* a defendant must establish that the representation provided him "fell below an objective standard of reasonableness," and that the deficient representation prejudiced the outcome of the trial, that is, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687–94, 104 S.Ct. at 2064–68.

■ The government argues that although defendant characterizes his attorney's assistance as constitutionally ineffective, the alleged ineffectiveness amounts merely to counsel's failure to recognize the possible basis for a claim, which does not constitute "cause." It is true that in *Murray,* 477 U.S. 478, 106 S.Ct. 2639, the Supreme Court held that the mere failure to recognize the possible factual or legal basis for a claim out of ignorance or inadvertent error does not constitute "cause" for a procedural default. *Id.* at 486, 106 S.Ct. at 2644. At the same time, however, the Court acknowledged that in some cases the right to effective assistance of counsel could be violated "by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Id.* at 496, 106

S.Ct. at 2649 (citing *United States v. Cronic,* 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984); *Strickland v. Washington,* 466 U.S. at 693–96, 104 S.Ct. at 2067–69). It is not enough to say that counsel "merely failed to identify a valid claim" without evaluating the seriousness of the failure and the obviousness of the claim. *See, e.g., Lee v. United States,* 939 F.2d 503 (7th Cir.1991) (counsel's failure to present evidence at sentencing hearing of defendant's legitimate income held to satisfy "prejudice" component of ineffective-assistance inquiry because evidence could have changed sentence imposed on defendant); *Nevarez–Diaz v. United States,* 870 F.2d 417, 422 (7th Cir. 1989) (cause for procedural default through ineffective assistance shown by counsel's failure to advance lack of intent defense relevant to guilty plea).

Ordinarily, the cause and prejudice inquiry begins with determining whether defendant was denied the effective assistance of counsel. In the particular circumstances of this case, however, the claim of ineffective assistance of counsel cannot be evaluated without first determining whether defendant's substantive claim has merit, and whether the merit was so obvious that failure to recognize it constituted ineffective assistance in and of itself. If the substantive claim is valid, and the 1969 convictions should not have been used, counsel's failure to raise the claim caused defendant undeniable prejudice: the difference between a maximum sentence of five years and a minimum sentence of fifteen. If such prejudice to defendant is established, and counsel's failure to raise the issue was the result of deficient performance, defendant will have shown cause for his default.

### B. *Merits of Claim*

1. Relationship between § 921(a)(20) and § 924(e)

■ The government contends that defendant's claim fails on its merits because § 921(a)(20)'s restrictive definition of "crime punishable by imprisonment for a term exceeding one year" applies only to the substantive firearms offenses proscribed in § 922(g) and not to sentence

enhancement in § 924(e). On its face, however, § 921(a)(20) is clear and unambiguous about its application to § 924(e): it is contained in the definitions statute at the beginning of Chapter 44, and it provides that any conviction for which civil rights have been restored "shall not be considered a conviction *for purposes of this chapter,*" ... (Emphasis added.) Ordinarily, when statutory language is unambiguous, it is regarded as conclusive. Resort to legislative history is proper only to determine whether there is " 'clearly expressed legislative intention' contrary to that language, which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). *See also Mansell v. Mansell,* 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989) (court must give effect to plain language of statute unless doing so would "thwart the obvious purposes of the [statute]"); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982) (general rule of giving effect to plain language of statute may be disregarded only when literal reading of the statute produces result "demonstrably at odds with the intention of [the] drafters").

The government makes a plausible argument that Congress did not intend that the escape clause in § 921(a)(20) would apply to § 924(e). It notes that the two statutes were amended during the same year, but at different times, and with very different purposes in mind. The sentence enhancement provision in § 924(e) is a recodification of 18 U.S.C.App. § 1202(a), which was part of the Armed Career Criminal Act of 1984, Pub.L. 98–473, ch. 18, 98 Stat. 2185. In the recodification, the term "any felony" in § 1202(a) was changed in § 924(e) to "any crime punishable by imprisonment for a term exceeding one year." Section 924(e) now reads:

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony ... such person ... shall be imprisoned not less than fifteen years, ...

(2) As used in this subsection—

\* \* \* \* \* \*

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

\* \* \* \* \* \*

The purpose behind the Armed Criminal Control Act was "to supplement the States' law-enforcement efforts against 'career' criminals." *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 2149, 109 L.Ed.2d 607 (1990). Congress was concerned about "the large proportion of crimes committed by a small number of career offenders, and the inadequacy of state prosecutorial resources to address this problem." *Id.* 110 S.Ct. at 2150.

On a different occasion in 1986, Congress amended § 921(a)(20) with the purposes of strengthening the Gun Control Act of 1968 and making federal law consistent with the state law that gave rise to the federal offense of possession of a firearm by a convicted felon. *See* 1986 U.S.Code and Cong. and Admin.News, Vol. 4, p. 1327. The change in § 921(a)(20) was to

accommodate State reforms enacted since 1968 which permit dismissal of charges after a plea and successful completion of a probationary period. Since the Federal prohibition is triggered by the States' conviction, the States' law as to what disqualifies an individual from firearms use should govern.

131 Cong.Record S 8689 (Daily Ed. June 24, 1985). The need for the definitional change in § 921(a)(20) became apparent when the Supreme Court decided *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). The Court upheld a conviction based on failure to disclose on a firearms application the fact of a state conviction that had been

deferred and expunged upon successful completion of probation. The Court held that the state's expunction of the prior conviction did not relieve the applicant of the obligation to disclose the conviction because federal law determined whether an individual was a convicted felon prohibited under § 922(g) from possessing a gun. The Court's reading of the Gun Control Act was that "expunction of a state conviction was not intended by Congress automatically to remove the federal firearms disability." *Id.* at 115, 103 S.Ct. at 993.

The government asserts that it is mere coincidence that "crime punishable by imprisonment for a term exceeding one year" was used in both statutes and that it is unlikely that Congress intended the amendment to § 921(a)(20) to limit the reach of the career criminal sentencing enhancement provisions in § 924(e). It argues that the amendment to § 921(a)(20) reflects congressional concerns about the notice and conflict of laws problems implicated in making people liable under federal law for conduct they believe is legal under their understanding of state law, not the concern about professional criminals that motivated the amendments to § 924(e).

The government concedes that its argument was rejected by the Court of Appeals for the Eighth Circuit in *United States v. Traxel*, 914 F.2d 119, 122 (8th Cir.1990), in which the court held that § 921(a)(20)'s definition of crime punishable by imprisonment for a term exceeding one year "applies throughout the entire firearms chapter of the United States Code. 18 U.S.C. § 921(a) (1988)." The government argues, however, that *Traxel* should not be followed because the court failed to consider either the distinction between substantive offenses and penalty provisions, or the legislative histories of the two sections, § 924(e) and § 921(a)(20), and because following it would frustrate the purpose of § 924(e) of holding felons accountable for their past violent conduct. The government does not explain why the distinction between substantive offenses and penalty provisions supports a different view of the language. It is not unreasonable to suppose that Congress intended to exclude

from enhanced punishment persons whose prior convictions have been expunged by the states. It makes sense to assume that the state has determined that such persons do not present a present risk to society, and therefore do not need the additional punishment intended for career criminals.

It is possible that the drafters of the 1986 amendments to the two statutes would have added language to address the interplay between § 921(a)(20) and § 924(e) had they recognized the problem, but I cannot say that the result they achieved is so obviously unintended as to justify judicial rewriting of the statutory language.

2. Application of § 921(a)(20)

In remanding defendant's § 2255 motion, the court of appeals noted that its recent decision in *United States v. Erwin*, 902 F.2d 510, might foreclose defendant's claim. In *Erwin*, the court reviewed the conviction and enhanced sentencing of a previously convicted Illinois resident who had been restored by operation of statute to certain civil rights: the rights to hold office, vote, and hold certain state licenses that had been suspended. The court of appeals agreed with the district court's finding that Illinois had not restored to Erwin the right to possess a firearm, and that without the restoration of this particular right his conviction was still in effect under Illinois law and properly used for sentence enhancement purposes under § 924(e). *Id.* at 512–13. The court concluded that a review of the statutes would advise an offender of the civil rights that had been restored to him. Although Ill. Rev.Stat. ch. 38 § 1005-5-5 restored Erwin's civil rights in general terms, another statute, Ill.Rev.Stat. ch. 38 § 24-1.1, prohibited a previously convicted felon from possessing a gun.

In finding Erwin's conviction valid, the court of appeals analyzed the last two sentences of § 921(a)(20). The first of these reads as follows:

What constitutes a conviction of [a "crime punishable by imprisonment for a term exceeding one year"] shall be determined in accordance with the law of the

jurisdiction in which the proceedings were held.

According to the court, this sentence means that if a state does not restore the right to possess firearms, and continues to view the felon as having been convicted under its own laws prohibiting firearm possession by a felon, the federal court is not free to disregard the state's view of the defendant as a convicted felon simply because the state has restored one or more of his civil rights.[5] *Erwin,* 902 F.2d at 512 (citing *United States v. Cassidy,* 899 F.2d 543 (6th Cir.1990)). The court contrasted this situation with that in *United States v. Kolter,* 849 F.2d 541 (11th Cir.1988), in which the defendant had received a pardon that restored all of his civil rights, including an entitlement to possess weapons.

The second of the last two sentences of § 921(a)(20) reads in full as follows:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

On its face, this sentence seems to override the previous sentence. The court of appeals rejected that possibility in *Erwin.* It characterized the second sentence as an "anti-mousetrapping" provision, designed to protect the felon who receives a piece of paper that seems to indicate he is no longer convicted and has had all of his civil rights restored, and not intended to mean that any person to whom a state restores any civil rights is no longer considered to be convicted "even though 'the law of the jurisdiction in which the proceedings were held' considers him to be a convicted felon." *Erwin,* 902 F.2d at 512–513.

The court of appeals found that Erwin was not "mousetrapped" because the same state statutes that restored certain of his civil rights contained a provision prohibiting him from possessing a firearm. *Id.* This was sufficient to constitute express notice that the state had decided to withhold from him an entitlement to carry a gun. The court noted that its holding would be different if Illinois had sent Erwin a piece of paper that appeared to "dole out an apparently-unconditional restoration of rights" and implied that he was no longer "convicted" of the crime and that "*all* of his civil rights [had] been restored." *Id.* In that case, the state "must tell the felon point blank that weapons are not kosher" by including that commandment on the piece of paper purporting to restore all of the felon's civil rights. *Id.* at 513.

The court expressed some doubt about the holding in *United States v. Cassidy,* 899 F.2d 543, that receipt of a certificate purporting to restore rights does not operate to exclude a conviction if existing state law bars discharged felons from possessing guns. The Court of Appeals for the Sixth Circuit concluded that "if a 'convicted felon' has his civil rights restored by operation of state law, *with or without a certificate or order documenting the event,* [the federal court] must look to the whole of state law of the state of conviction to determine whether the 'convicted felon' is entitled to vote ..." or possess a firearm. *Id.* at 549 (emphasis added).

3. Wisconsin law

   a. Status of convicted felon

Wisconsin law prohibits the possession of firearms by convicted felons. Wis.Stat.

---

5. A number of courts have attempted to divine what Congress intended to encompass when it referred to the restoration of *civil rights* in § 921(a)(20). *See, e.g., United States v. Cassidy,* 899 F.2d at 546 ("it is not clear which civil rights must be restored to constitute a 'restoration of civil rights'"); *United States v. Erwin,* 723 F.Supp. 1285, 1297 (C.D.Ill.1989), *aff'd,* 902 F.2d 510. *See also United States v. Traxel,* 914 F.2d at 123 (where state statute restores discharged person to all civil rights and full citizenship, resort to other state statutes proper only if they concern the specific right to possess firearms). Most courts focus on whether the state has restored the right to possess firearms, since that is the specific right at issue. Of course, the idea of looking for restoration of a state *right* to possess firearms is incongruous; there is no individual civil right to bear arms, as the court points out in *Cassidy,* 899 F.2d at 549 n. 12. It would be more accurate to speak in terms of lifting the prohibition against the possession of firearms.

§ 941.29. Like the Illinois statute in *Erwin*, 902 F.2d 510, Wis.Stat. § 941.29 evidences Wisconsin's intent not to restore to convicted felons the right to possess a firearm. The statute contains no exemption for convictions for which a felon has had his civil rights restored: it exempts only persons who have received pardons or who have obtained relief from disabilities under federal law, pursuant to 18 U.S.C. § 925(c). The statute makes it explicit that Wisconsin views unpardoned felony convictions as having continuing effect. Although the statute was not enacted until 1981, it is intended to apply to convictions that occurred prior to the enactment of the statute. *See* 1981 Wis.Laws ch. 141, § 2: Wis. Stat. § 941.29 is intended to apply "regardless of the date the crime specified under section 941.29(1) of the statutes, as created by this act, is committed."

Before 1981, the law was less clear about the disabilities of convicted persons, but nothing in it would have given assurance to a previously convicted person that he could possess a gun lawfully. Wis.Stat. § 57.078 made no reference to gun ownership, and the state constitution contained no provision relating to any right or privilege of any person to possess a firearm, whether the person is convicted or unconvicted. Exactly what the restoration of civil rights was intended to mean has been the subject of only one case. In *Wisconsin Law Enforcement Standards Board v. Village of Lyndon Station*, 98 Wis.2d 229, 295 N.W.2d 818 (Ct.App.1980), *aff'd*, 101 Wis.2d 472, 305 N.W.2d 89 (1981), the Wisconsin Court of Appeals held that the civil rights referred to in § 57.078 did not include the right to hold public office, but were concerned primarily with the restoration of the voting rights that are withheld from convicted felons pursuant to art. III, sec. 2 of the Wisconsin Constitution.

*Erwin* holds that the crucial inquiry is whether the state considers the person convicted. 902 F.2d at 512. Wisconsin law deems defendant to be a convicted person for the purpose of acquiring and possessing a gun. Prior to 1982, it might have been possible for a defendant to argue that state law was unclear about the effect of a conviction for which the convicted person has received a discharge. After 1982, such an argument is meritless.

If 18 U.S.C. § 921(a) provided only that convictions are to be determined in accordance with the law of the convicting jurisdiction, defendant would have no valid argument that his 1969 convictions were not convictions for purposes of sentence enhancement. The only question is whether the last sentence of § 921(a)(20) applies to defendant's discharge certificate and if so, whether it bars the federal court from considering for enhancement purposes the felony convictions from which defendant has been discharged.

b. Potential for deception

The certificate the state sent defendant in 1976 did not list any specific civil rights restored or withheld. It stated merely that defendant had met the conditions of his sentence, and that "[a]ny civil rights lost as a result of conviction ... are restored by virtue of this discharge," pursuant to Wis. Stat. § 57.078. Wis.Stat. § 57.078 provided no greater enlightenment, and Wis.Stat. § 941.29 was not yet in effect. As of 1976, it would not have been obvious to defendant or anyone else that the state continued to view him as a convicted felon because of his 1969 convictions. Both the certificate and the statute to which it refers are far more general than the Illinois statute at issue in *Erwin*. Although the certificate did not state that defendant was no longer "convicted," it appears to have been the type of communication contemplated by *Erwin* that can mislead a defendant into thinking that he has been restored to all possible civil rights. "[I]f the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution." *Erwin*, 902 F.2d at 512–13.

Nevertheless, it does not follow that defendant cannot be subjected to an enhanced penalty in reliance on his apparently discharged convictions. *Erwin* makes clear that the last sentence of § 921(a)(20) is not

to be read as according a defendant substantive rights, but only to ensure that he is not misled affirmatively into believing himself free of any legal prohibition against his possession of firearms.

Defendant was not "mousetrapped" by the receipt of the certificate and misled into thinking he was no longer a convicted person for the purpose of possessing or acquiring firearms. When he received his discharge certificate in 1976, he was serving a sentence for a felony committed in 1975. He has never suggested that he received a discharge from that conviction, or from his 1976 conviction for federal firearms violations. He had no reason to believe that he could possess a firearm legally, either in 1976 or in 1987, when he possessed the firearm that is the basis for the enhanced sentence.

Moreover, defendant had express warning that he was not considered free of his firearms disabilities from the federal district court when he was convicted in 1976. In finding defendant guilty of violations of the federal firearms laws, the court stated clearly that defendant's disabilities had not been removed by his receipt of a discharge certificate:

> [T]he defendant received a restoration of civil rights simply by satisfying his sentence. The parties stipulated that after Mr. Ziegenhagen served a term in prison and completed a period of parole, he received a certificate pursuant to § 57.078 Wis.Stats. Neither the stipulation nor the state statute suggests that the defendant's civil rights were restored because he was subsequently found innocent of the state felony charges.

*United States v. Ziegenhagen,* 420 F.Supp. at 74. In reaching this decision, the court was relying on *Thrall v. Wolfe,* 503 F.2d 313 (7th Cir.1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975), in which the court of appeals had held that even a person who has received a state gubernatorial pardon is regarded as a convicted felon for the purposes of possessing firearms under the federal laws, unless the gubernatorial pardon is based on a determination that the person is innocent of the crime.

The holding in *Thrall* does not survive the changes in the Gun Control Act made in 1986, but this does not mean that the opinion did not serve the purpose of warning defendant that the 1976 discharge certificate did not change his status as a convicted felon. So far as defendant knew, the federal district court's holding remained valid in 1987. Had he undertaken a thorough legal search of the applicable statutes and laws before acquiring a firearm in 1987, he would have learned that *Thrall* was no longer good law, but he would have learned also that Wisconsin law had filled in the gap and that he was prohibited expressly from possessing a firearm under state law. Either way, defendant had reason to believe that Wisconsin considered him convicted for purposes of 18 U.S.C. § 921(a)(20).

In summary, the discharge certificate issued to defendant in 1976 was intended to restore the right to vote he lost when he was convicted in 1969; it did not restore his rights within the meaning of § 921(a)(20); that is, it did not relieve him of any prohibitions against possessing a gun. To the extent the document appeared to do so, it did not mislead defendant into believing he could possess a gun legally without becoming subject to the enhanced penalty provisions of § 924(e). Even if the certificate had led defendant to think he was no longer subject to any disabilities arising from his 1969 convictions, he was given express notice shortly thereafter that he was considered convicted under Wisconsin law for purposes of the federal firearms statutes. There was no impediment to using defendant's 1969 convictions to enhance his sentence in 1989. Defendant suffered no prejudice from his counsel's failure to object to the use of those convictions and that failure did not amount to ineffective assistance of counsel that would constitute cause for defendant's failure to raise the issue on direct appeal.

## ORDER

IT IS ORDERED that defendant's motion for vacation of his sentence pursuant

to 28 U.S.C. § 2255 is DENIED for defendant's failure to show cause and prejudice for not challenging on direct appeal the use of the 1969 convictions to enhance his sentence pursuant to 18 U.S.C. § 924(e).